## TIFTON, THOMASVILLE & GULF RAILWAY COMPANY
### *v.* BEDGOOD & COMPANY.

Contract rights coupled with liabilities, or involving a relation of personal confidence between the parties, can not be transferred to a third person by one of the parties to the contract without the assent of the other.

The trial judge erred in overruling the demurrer to the petition.

Argued December 17, 1902. — Decided January 10, 1903.

116　945
119　599
116　945
e121　818
121　820
116　945
d122　63

Action for breach of contract.    Before Judge Covington.    City court of Moultrie.    June 24, 1902.

*Dessau, Harris & Harris, J. H. Merrill,* and *J. A. Wilkes,* for plaintiff in error.    *Pearsall & Shipp,* contra.

LITTLE, J.    It appears from a petition filed by the firm of R. A. Bedgood & Company against the Tifton, Thomasville & Gulf Railway Company, and from the exhibits attached thereto, that in October, 1899, A. Huber and R. L. Stokes, composing the firm of Huber & Stokes, purchased from the Union Lumber Company all the timber suitable for sawmill purposes on certain lots of land, aggregating 1,617 acres, in Colquitt county, and that on the same day they entered into a contract with the Tifton, Thomasville & Gulf Railway Company, obligating and binding the railway company to put in a side-track to the sawmill of Huber & Stokes, located on the land upon which the timber sold and conveyed was then growing; that in November, 1899, Huber & Stokes, for a consideration of $7,550, transferred all of their right, title, and interest in the timber aforesaid, and also their contract with the railway company, to R. A. Bedgood, who purchased the same for petitioners; that in February, 1900, Bedgood, in writing, sold and transferred to petitioners the timber and leasehold interest in the land on which it was situated, and they, as well as Bedgood and the firm of Huber & Stokes, relied on the contract made between the railway company and Huber & Stokes, which obligated the railway company to construct the side-track, and but for this contract and obligation to construct the side-track petitioners would not have purchased said timber; that before they purchased it they conferred with the vice-president and secretary of the defendant company, and were assured that the latter would construct the side-track not later than the first of the year 1900; that the railway company has totally failed and refused to put in the side-track; and that by reason of such failure petitioners have been damaged in the sum of $4,560.05. A copy of the contract between the railway company and Huber & Stokes is as follows:

" State of Georgia, Colquitt County.    This agreement, made and entered into this the 24th day of October, 1899, by and between the Tifton, Thomasville and Gulf Ry. Co., of Thomas county and said State, of the first part, and Huber & Stokes, of Colquitt

County and said State, of the second part, witnesseth: That the said Huber & Stokes have located, near the line of the T., T. & Gulf's Railroad, a certain sawmill.   Now the said Huber & Stokes, for all and in consideration of the exchange of certain timber in the 8th district of said county, of which leases have this day been made and exchanged between the said Huber & Stokes and the Union Lumber Co., and for further consideration that the said Tifton, Thomasville & Gulf Ry. Co. will put in a side-track to connect with said mill on said line of railroad, about fifteen hundred (1500) feet long.   And the said Tifton, Thomasville & Gulf Ry. Co. obligate themselves to haul the entire output of lumber, or as much as said Huber & Stokes ship over any line of railroad, at as low rate of freight as any competing railroad for said mill, and in no event is the said Tifton, Thomasville & Gulf Ry. Co. to charge more than the rate charged the Union Lumber Co. for similar freight.   And the said Huber & Stokes obligate themselves to ship all lumber cut by them over said company's railroad, except the local bills that may be cut by them.   In witness whereof the said parties have this day set their hands and seals, the day and year above written. " Signed, sealed, and de-  Tifton, Thomasville & Gulf Ry. Co. (L. S.) livered in the presence of      Per J. W. Hightower, V. P. (L. S.) G. G. Henderson.                  Huber & Stokes. (L. S.) J. F. Cooper, N. P., Colquitt Co., Ga."

On the back of said contract were the following transfers: (1) " Georgia, Colquitt County.   For value received we do hereby set over and assign all of our right, privilege, interest, and franchise in and to the within contract, to R. A. Bedgood, his heirs, assigns, and legal representatives.   Witness our hands and seals this Nov. 3rd, 1899.   [Signed]   A. Huber (L. S.), R. L. Stokes, (L. S.). Signed, sealed, and delivered in the presence of Matt J. Pearsall, Z. H. Clark, N. P., C. C." This transfer was duly filed and recorded in the office of the clerk of the superior court of Colquitt county. (2) " Georgia, Dooly County.   For value received I hereby set over and assign all my rights, privilege, and franchise in and to the within contract, to R. A. Bedgood Company (a firm composed of R. A. Bedgood, J. L. Butler, and O. M. Grady), their heirs, assigns, and legal representatives.   Witness my hand and seal this Feb'y 2nd, 1900.   [Signed]   R. A. Bedgood (seal).   Signed, sealed, and delivered in the presence of [signed] W. H. Cribb, N. P., D. C."

To the petition making the case above set out the defendant filed a general and certain special demurrers on a number of grounds, which were overruled by the court, and the defendant excepted. As we have reached the conclusion that the petition on its face does not show any right of action in the plaintiffs, it is not necessary that the grounds of the demurrer should be taken up seriatim. We will, therefore, confine ourselves to a discussion and decision of one proposition of law raised by the demurrers, which must control the case adversely to the plaintiffs below; to wit, that the transfer of the contract gave plaintiffs no right of action against the railway company for a breach thereof. It is alleged in the petition that before plaintiffs purchased from Huber & Stokes the timber which they intended to cut into lumber, they conferred with the vice-president and secretary and treasurer of the railroad company, and were assured by these officers that the railroad company would carry out the contract it had made with Huber & Stokes to construct the side-track; and it is insisted by counsel for defendants in error that this assurance, independently of the validity of the assignment of the contract to the plaintiffs is binding on the railroad company. If there is any merit in this contention, it must rest on the proposition that these assurances of the officers of the railroad company constituted a distinct and independent contract which the railroad company made with Bedgood & Company to put in a side-track at the mill which they were about to purchase. Certainly, if such a contract was really entered into, and founded on a proper consideration, the plaintiffs would have a right of action against the railway company in case the latter violated its terms; but an examination of the sixth paragraph of the petition, which contains an allegation of what transpired between the plaintiffs and the officers of the railway company, will disclose that no contract to construct the side-track was entered into between the railway company and the plaintiffs. The allegation is, that the plaintiffs conferred with the officers of the company, and were assured by those officers that the defendant company would at once carry out the contract and construct the side-track. Carry out what contract? Evidently that made with Huber & Stokes. This they were bound under the law to do, and no assurances by the officers of the railway company added any force to the obligation of that contract. It does not appear from the allegations that a different and distinct contract

was made with the plaintiffs, but only that the defendant prom-
ised to carry out the contract which it had before that time made.

Again, even if these assurances could be construed as a contract
between the railway company and plaintiffs to construct a side-
track, it does not appear that there was the slightest consideration
for the same.   It is not alleged that any money or valuable thing
was to be paid for the erection of the side-track, nor is any obli-
gation shown by which the plaintiffs undertook to ship over the
road of the defendant the product of their mill.   So in no event
can the allegations in the petition be construed as establishing a
valid contract between the plaintiffs and the defendant in relation
to the construction of the side-track, a breach of which would give
to the plaintiffs a right of action; and taking the allegations of the
petition as a whole the plaintiffs have no right of action against
the railway company, unless the same accrued by virtue of the
assignment of the contract made between the railway company
and Huber & Stokes.   This contract bound the railway company,
for a sufficient consideration, to put in a side-track to connect its
main line with the sawmill of Huber & Stokes, and to transport
over its railway lumber shipped by Huber & Stokes at a certain
rate; and it bound Huber & Stokes to ship all the lumber cut by
them over the company's railway, with a named exception.   The
plaintiffs were not parties to this agreement, but, as will be seen,
in November, 1899; R. A. Bedgood, one of the present plaintiffs,
received from Huber & Stokes an assignment of their interest in
the contract, and he in turn, in February, 1900, assigned the inter-
est which he thus acquired in the contract, to the plaintiffs.   It is
claimed by counsel for the plaintiffs below that by these assign-
ments Bedgood & Company took the place of Huber & Stokes in
the contract, and were entitled to a performance of its terms on the
part of the railway company; and this contention is based on the
proposition that all choses in action may be assigned; and we are
cited to a number of authorities to prove the proposition.   We con-
cede the doctrine to be well established in this State that choses
in action arising upon a contract may be assigned.   Civil Code,
§ 3077.   But the assignment of a chose in action and the assign-
ment by one of the parties thereto of his right in an executory con-
tract such as is set out in this record, are two different and distinct
things.   All choses in action arising under contract may be trans-

ferred.  Executory contracts of a certain character may likewise be transferred.  The rule universally recognized is that "rights arising out of contract can not be transferred, if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided."  Pollock on Contracts (4th ed.), *425, and authorities cited.  Mr. Clark in his work on Contracts, p. 524, citing a number of authorities, declares that it is a settled rule that a person can not assign his liabilities under a contract, or, "to put the matter from the point of view of the other party to the contract, a person can not be compelled to accept performance of the contract from a person who was not originally a party to it."  The same author, in dealing with this subject, also says that a person "may so assign with the consent of the other party to the contract; but this is, in effect, a rescission by agreement, and the substitution of a new contract."

All the modern text-writers, so far as we have been able to ascertain, recognize that the doctrine above cited from Mr. Pollock is fully established.  See Hammond on Contracts, § 355, and note 48 on page 724; Hollingsworth on Contracts, 295; Harriman on Contracts, 228 (§ 382); Anson on Contracts, 287.  Possibly the leading modern case in which the doctrine of the assignability of such contracts as this is most fully discussed and applied is that of Arkansas Smelting Co. *v.* Belden, 127 U. S. 379.  In the course of the opinion in that case Mr. Justice Gray, who delivered it, in support of the ruling there made says: " At the present day, no doubt, an agreement to pay money, or to deliver goods, may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him, or by some other stipulation, which manifests the intention of the parties that it shall not be assignable.  But every one has a right to select and determine with whom he will contract, and can not have another person thrust upon him without his consent.  In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract.'"  The learned judge then quotes the rule from Pollock on Contracts, above quoted; and applying the principles con-

tained in that rule, the court held that the contract then under consideration could not be assigned by one party to it without the assent of the other. The doctrine of this case was subsequently approved in the cases of Delaware County *v.* Diebold Safe & Lock Co., 133 U. S. 473, and in Burck *v.* Taylor, 152 U. S. 634 (see page 651). Under the contract sought to be assigned, Huber & Stokes had the right to have the side-track. This right, however, under the same instrument was coupled with a liability on the part of Huber & Stokes to ship over the line of the railway company all lumber cut by them, except local bills. The right which Huber & Stokes had was coupled with a liability. Again, the railway company may have had perfect confidence that Huber & Stokes would so conduct their business as to cut an amount of lumber which would have been profitable to transport. They might have been unwilling, for reasons satisfactory to themselves, to have incurred the expense of constructing a side-track for Bedgood & Company, or any other particular person or firm. They would have had a perfect right to decline to enter into a similar contract with these plaintiffs; and if the assignment of the contract has the legal effect of transferring to the plaintiffs the rights which Huber & Stokes took under it, then the railway company would be put in a position of performing their part of the contract — that is, to construct the side-track, without confidence that the assignee of Huber & Stokes would cut and ship a sufficient amount of lumber to be profitable. Indeed, if the railway company had constructed the side-track, we know of no rule of law which would have compelled the plaintiffs to ship their output of lumber over the defendant's line of railway, under the assignments which appear on this contract. So, therefore, we easily come to the conclusion, under the rule established by the authorities cited, that the contract for a breach of which the plaintiffs claim damages was not assignable; that the plaintiffs took no right under the assignment of it to them; that the petition set out no cause of action, and that the trial judge erred in overruling the demurrer to the same.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*