## COUNCIL *v.* TEAL.

1. In the absence of a stipulation to the contrary, one who obligates himself by written contract to bore an artesian well for another is at liberty to fulfil his engagement through workmen over whom he places a superintendent to direct how the work shall be done, and is under no obligation to himself perform any of the labor or to give his personal attention to the work.

2. Where the contractor signs the contract in his own name as an individual, he may properly bring suit thereon against the other party to compel payment for the work done, notwithstanding the contractor may have been in partnership with a third person who superintended the boring of the well, and who, under a private understanding between them, was to share in the profits realized from the undertaking.

3. Though the boring of the well was continued after water had been reached, the party for whom it was being drilled can not complain that work was not then stopped at his request and the water tested, when he deferred to the opinion of the superintendent that the supply was insufficient, and permitted him, without further objection, to carry on the work; and this is true notwithstanding a sufficient supply of water was subsequently obtained at the same depth by boring another well at a point but a short distance away.

4. When error is assigned on the refusal of a trial court to allow a witness to be interrogated touching a given subject, it is incumbent on the excepting party to disclose what facts he sought to elicit from the witness, in order

that it may appear whether the testimony rejected was relevant to the issue and would have been beneficial to the party offering the same.

5. When a jury fails to reach a verdict because one of the jurors is wedded to his own opinion concerning the law of the case and refuses to apply to the facts thereof the law as given in charge by the court, it is proper for the trial judge, on being advised as to why the jury are unable to agree, to instruct the jury that they are bound by their oaths as jurors to take the law from the court and from no other source. For no reason assigned by the plaintiff in error did the court err in the instructions given to the jury upon this subject.

6. The evidence warranted the finding in favor of the prevailing party.

Argued December 13, 1904.— Decided February 1, 1905.

Complaint. Before Judge Crisp. City court of Americus. January 16, 1904.

*Williams & Harper* and *Allen Fort & Son,* for plaintiff in error. *E. A. Hawkins,* contra.

Evans, J. On August 30, 1900, H. R. Teal and M. B. Council entered into a written contract under the terms of which the former was to drill an artesian well on the farm of the latter, commencing with casing four and one half inches in diameter and finishing with casing as large as practicable, the work to be commenced as near the first of October as practicable and to be pushed to completion as fast as practicable. It was stipulated in this contract that Teal did not guarantee the well "to flow above the surface," but was to be paid "one dollar per foot for the depth of well drilled," and that Council was to furnish the necessary casing and was to board three men while doing the work. The well was commenced and partially completed under this contract. On July 3, 1901, Teal instituted an action against Council, alleging that after the well had been drilled to a depth of four hundred and fifty-one feet, the defendant declined to furnish any more casing, and plaintiff was in consequence compelled to abandon the work; that defendant was indebted to him in the sum of $451.00 under the contract rate of one dollar per foot for all the depth of well drilled, and also in the sum of $5.80 for certain material furnished at defendant's request, which amounts the defendant refused to pay. An answer was filed by Council, in which he admitted the execution of the written contract, a copy of which was attached to the plaintiff's petition, but asserted that the writing did not set forth the entire contract, and that he had not committed the alleged breach thereof, nor was he indebted to the

plaintiff in any amount save as to the item of $5.80 for material furnished. The defendant also filed a special plea wherein he averred that the plaintiff had himself, in various particulars, violated the contract; that the well had not been drilled in a skillful or workmanlike manner, was totally worthless, and that the plaintiff's failure to perform his obligations under the contract had endamaged him (the defendant) in the sum of one thousand dollars. A portion of this plea was, on demurrer by the plaintiff, stricken by the court, and the defendant filed exceptions pendente lite to its judgment. Like exceptions were filed by the plaintiff to the refusal of the court to strike other portions of the defendant's plea. The case was then tried on its merits, and resulted in a verdict for the plaintiff; whereupon the defendant made a motion for a new trial, which was overruled. He sued out a bill of exceptions in which he assigns error on striking part of his special plea, as well as upon the judgment overruling his motion for a new trial. The plaintiff, in a cross-bill of exceptions, complains of the refusal of the court to strike other portions of this plea.

1. The defendant stated in his plea that he " expected and understood " that the plaintiff would give his personal attention to the boring of the well, and that one inducement for making the contract was the reputation of the plaintiff in regard to boring artesian wells, but the plaintiff, instead of giving personal attention to the matter, turned the same over to one Brewer, who was of a disagreeable and arbitrary disposition and from whom defendant could get no satisfaction in regard to the progress of the work. The court very properly struck this allegation. The defendant did not undertake to aver that the plaintiff had agreed to give personal attention to the work, nor to have it done by an agent whose disposition was irreproachable and from whom the defendant " could get satisfaction" as to the progress made. The written contract sued on certainly does not so stipulate. The present case does not fall within the rule stated in *Tifton Ry. Co.* v. *Bedgood,* 116 *Ga.* 945, that "Contract rights coupled with liabilities, or involving a relation of personal confidence between the parties, can not be transferred to a third person by one of the parties to the contract without the assent of the other." Our code provides that " Whatever one may do himself may be done by an agent, except such personal trusts in which special confi-

dence is placed on the skill, discretion, or judgment of the person called in to act." Civil Code, § 2999. To contract to drill an artesian well does not involve any personal trust, any more than to contract to dig a ditch or to erect a building; and in the absence of a stipulation to the contrary, the contractor may perform his contract obligations through agents, being accountable, of course, for the manner in which they prosecute the work.

The " personal trusts" referred to in the above-cited section of our code are those arising out of a fiduciary relation such as the relation between principal and agent, and the like ; and that section has no application to the contractual relation existing between the parties to an agreement under the terms of which one of them obligates himself to accomplish a given task, not alone or in person, but through workmen in his employ. The written contract declared on in the present case on its face negatives the idea that Teal was himself to perform the labor incident to the boring of the well, and contains no stipulation that he was to personally superintend the work. This being true, Council had no ground on which to base his expectation and understanding that Teal would give his personal attention to the boring of the well. Civil Code, § 3724. Other allegations in the defendant's plea were stricken by the court, and exception was taken to its action in so doing. But in the brief and argument filed in behalf of the plaintiff in error no insistence is made that the court committed error in striking these allegations, and the assignments of error touching them are therefore to be treated as having been abandoned.

2. After the plaintiff had announced closed, the defendant made a motion for a nonsuit, on the ground that "if a case was made out at all and any one was entitled to recover, it was the firm of H. R. Teal, composed of H. R. Teal and M. N. Brewer, and not H. R. Teal in his individual capacity." The contention of the defendant was that the testimony disclosed that at the time the written contract was executed, Teal and Brewer were partners and that Brewer was jointly interested with Teal in the fruits of that contract. There was no assignment to Brewer of any interest in the contract; and, it having been executed in the name of Teal as an individual, the suit thereon was properly brought in his name. Relatively to Council, the firm of which Brewer and Teal were members was an entire stranger to the contract, and in

undertaking to carry out its terms Brewer acted merely as the agent of Teal, notwithstanding any private understanding between him and Teal that they, as partners, should share the profits realized. The trial judge rightly declined to grant a nonsuit, and very properly instructed the jury as to the relation Brewer bore to Council and Teal while engaged in carrying on the work as the representative of Teal.

3. Complaint is made, in the motion for a new trial, of the refusal of the court to permit the defendant to testify that "since Brewer had left defendant's place, he had another well bored near and in close proximity to the hole bored by Brewer, and that he had an abundant supply of water at the same depth at which he told Brewer to stop." This testimony was offered in support of the defendant's plea of "unskillful management on the part of plaintiff." The evidence discloses that when "the hole bored by Brewer" had reached a depth of some two hundred feet, water had been struck, and the defendant had requested him "to stop and test it," saying he was satisfied that was the water he wanted, but that Brewer had peremptorily replied that defendant "didn't know anything about it," while he (Brewer) "knew all about it." The evidence further shows, however, that the defendant waived the point by deferring to Brewer's judgment in the matter, furnishing additional casing called for by him, and permitting him to continue the boring. This being so, the defendant can take no advantage from the fact that he "tried to get Brewer to stop and test" the water reached. Furthermore, the defendant did not offer to show that this water came from the same stream which had been struck when the well subsequently bored reached a depth of two hundred feet. The testimony rejected would not have warranted the inference that such was the truth of the matter; for it is a fact quite universally known that underground streams of water, varying in volume and wholly independent of each other, may exist in close proximity to one another at a given depth beneath the surface.

4. Error is also assigned on the refusal of the court to "allow defendant to show by" certain named witnesses "what a well was." The motion for a new trial does not disclose what facts the defendant expected to elicit from these witnesses; so we are unable to determine the relevancy of the testimony rejected, or

whether it would have been beneficial or otherwise to the defendant. Such an indefinite assignment of error can not be considered. *Allen* v. *Kessler*, 120 *Ga.* 319.

5. After the jury had retired to make a verdict and had deliberated over the case for about four hours, they sent a request to the court to be recharged as to certain questions of law, with which request the court complied. One of the jurors, who had at one time practiced law, "attempted to argue the matter with the court," saying he knew something of the law. He was suppressed. The jury again retired, but were unable during the ensuing night to agree on a verdict. On the following morning, the court sent for the jury and was advised by the foreman that they stood eleven to one, and that it was still a question of law that was troubling the jury. On inquiry, the court ascertained that the trouble related to the same matters as to which the jury had been recharged on the night preceding; and, believing one of the jurors was still applying his own legal opinion, instead of accepting the law from the court, the presiding judge in positive terms informed the jury that they were bound by their oaths to get the law from the court and from no other source whatever, as they were merely judges of the facts and had nothing to do with the law. Complaint is made that the court so instructed the jury of its own motion, without any request from the jury or from the counsel on either side. This complaint is devoid of merit. It further appears that, after the jury had been instructed as above stated, the foreman asked if the jury had "anything to do with the equity of the case," and that the trial judge replied: "I have charged you as plainly as I know how, as the English words will make it, that you have nothing to do whatever with the law except what I tell you is the law." In the motion for a new trial it is asserted that the court erred in the part it took in so replying to the foreman, "same being contrary to law." This general complaint presents no question on which we can intelligently pass, no reason being assigned by the complaining party as to why he characterizes the action taken by the court as being contrary to law. *Roberts* v. *Keeler*, 111 *Ga.* 181; *Turner* v. *Alexander*, 112 *Ga.* 820. We can only in like general terms reply that for no reason pointed out and insisted on by the plaintiff in error did the court commit any error prejudicial to him.

6. As to the general grounds of the motion, in which the verdict is assailed as being contrary to the evidence and without evidence to support it, suffice it to say that the finding of the jury was fully warranted.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concur.*