## GEORGE W. MULLER BANK FIXTURE COMPANY *v.* GEORGIA STATE SAVINGS ASSOCIATION *et al.*

1. A foreclosure of a mechanic's lien, alleging that the work done and material furnished were pursuant to a contract with the contractor, and praying a general judgment against the contractor and the foreclosure of the lien against the improved property, is not amendable by adding a second count alleging that the materials furnished and work done were at the instance and with the consent of both contractor and owner, and praying judgment in personam against both for the reasonable value of the material and services, and for a foreclosure of the lien.
2. A mechanic furnishing material and doing work on the employment of a subcontractor does not acquire a lien against the property improved. Applying this principle to the evidence, a nonsuit was proper.
3. The excluded evidence, even if allowed, would not have materially changed the case.

AUGUST 14, 1915.

Lien foreclosure. Before Judge Charlton. Chatham superior court. January 13, 1914.

*Anderson, Cann & Cann,* for plaintiff.

*Osborne & Lawrence* and *Hitch & Denmark,* for defendant.

EVANS, P. J. The George W. Muller Bank Fixture Company brought suit against the Georgia State Savings Association, the owner of the property, and E. Morgan, its contractor, to foreclose its lien as a materialman. The petition alleged, that the savings association was the owner of a certain described lot of land, and as such employed E. Morgan as contractor to make certain improvements upon the building located on the land; that the con-

tractor in turn contracted with the Southern Seating & Cabinet Company for installing certain cabinet, marble, and metal work; that the Southern Seating & Cabinet Company in turn duly transferred its contract for the material and work to the plaintiff, which at once notified the savings association and its contractor, who accepted petitioner in the place of the Southern Seating & Cabinet Company; that the contract was completed, and within three months the plaintiff's claim of lien was duly recorded; and that under the terms of its employment the plaintiff was to receive from the contractor $6,512.50, of which sum $4,596.56 had been paid, leaving a balance due of $1,916. The prayer was for a general judgment against the contractor, and for a foreclosure of the plaintiff's lien upon the real estate of the owner. The plaintiff proposed to amend its petition by adding a new count, in which it was alleged, that the Georgia State Savings Association had employed Morgan as the contractor to improve certain property described in the amendment, and that the plaintiff, "at the instance of and with the consent and recognition of the said E. Morgan and said Georgia State Savings Association, did the following work and supplied material in accordance with said employment as a contractor and materialman on the building owned by said Georgia State Savings Association heretofore referred to, and in the banking house thereof, as follows," describing the work and material. The prayer was, that plaintiff have judgment for the reasonable value of the work done and material furnished, amounting to $1,916, against the contractor and the association; and that the petitioner's lien be set up and established and foreclosed against the real estate. The court declined to allow the proffered amendment.

1. The cause of action set out in the second count is essentially different from that declared on in the original petition. The plaintiff proceeded originally on the ground that it was a subcontractor, and had furnished the material and performed the work by virtue of an express contract with the contractor. It was not sought to charge the owner with personal liability, but it was sought to impress the land with a lien by virtue of the statute. The cause of action set up in the proposed amendment is an implied assumpsit against the contractor and the owner for materials furnished and work done at their special instance and request. The contract it is thereby sought to imply is essentially different from that alleged

in the original petition. It is alleged in the petition that the contract was made with the contractor. In the amendment it is sought to set up an implied contract with the contractor and the property owner. The amendment was properly disallowed. *Lamar* .v. *Lamar &c. Drug Co.,* 118 *Ga.* 850 (45 S. E. 671).

2. The plaintiff complains of a nonsuit. It appears from the evidence that the Georgia State Savings Association employed E. Morgan to do certain described work on a building located upon the premises of the former. The contractor in turn sublet this work to the Southern Seating & Cabinet Company, which assigned to the plaintiff its contract. On February 12, 1912, Morgan, the contractor, acknowledged the receipt of a letter from the plaintiff, containing copies of an agreement between itself and the Southern Seating & Cabinet Company, a bond, an assignment, and an affidavit of Tigner. The letter from Morgan continued: "I do not intend to agree to anything whatever that will release the Southern Seating & Cabinet Company from any of its obligations under its contract. The agreement, copy of which you send me, is a matter entirely between yourselves and the Southern Seating & Cabinet Company. The bond is of course absolutely inadequate; the affidavit is worthless for the purpose for which it is made, because it is made by a corporation and not by an individual. It is apparent that a corporation can not swear. I am willing to facilitate the Southern Seating & Cabinet Company in their effort to complete their contract in every reasonable way, as I have done ever since the commencement of this work. But under no circumstances will I do anything to release them from their obligation to carry out their contract. I have no objection to the Southern Seating & Cabinet Company employing you to complete their contract for them for their account, provided, of course, this is satisfactory to the architect, Mr. Whitcover, and the Georgia State Savings Association. It must be understood, however, throughout, and until the completion and final settlement, that you are acting for the account of the Southern Seating & Cabinet Company and not in any sense as an independent contractor with me. With this understanding you may complete the contract for the account of the Southern Seating & Cabinet Company." On February 28, 1912, the plaintiff addressed to Morgan a letter in which it stated that its superintendent had informed it that Morgan would not

recognize it on the job of the Georgia State Savings Association, and wishing to know whether Morgan accepted the assignment "in a business way." Morgan replied to this letter on March 1, 1912, as follows: "Your superintendent is in error in stating that I take the position that I do not recognize you on the job of the Georgia State Savings Association. I have recognized the difficulties in which all parties have found themselves in the matter of this contract, and I have endeavored to be fair to all parties. In each instance in all I have done I have acted under legal advice, with the idea of being fair to everybody and at the same time protecting myself. I received a copy of your contract with the Southern Seating & Cabinet Co., and permitted you to go ahead with the work. I have not the slightest objection to your furnishing [finishing] the work. I have, however, taken the position that my original contract was with the Southern Seating & Cabinet Co., that your execution of the work did not relieve them from their liability to me under their contract, nor have I regarded you in any sense as an independent contractor. You have no right to ask more of me than could the Southern Seating & Cabinet Co., for whose account you are completing the work. For my part I want the work completed; and if you do the work, I desire to see you get your money, and I will do everything I can to help you get all that is due you. All I want is to be assured of the completion of the contract to the acceptance of the owner of the building. I am perfectly willing to make any payments from time to time which can fairly be collected under my original contract with the Southern Seating & Cabinet Co., and which can be made in justice to myself, having due regard to the fact that the way to assure the completion of the contract is to always keep enough back to pay for its completion. In conclusion permit me to say that I am just as anxious to have this work done and paid for as you are, and I am equally anxious to pay the man that does it to the satisfaction of the owner. While your letter makes it appear so, I really do not think there is any difference of opinion between you and me." On March 7, 1912, the plaintiff acknowledged receipt of this letter, and thereupon wrote to Morgan, among other things, as follows: "Summing up your entire letter, you have set forth certain conditions as they exist; and we agree with you on everything in your letter, with the exception that you have failed to

acknowledge the receipt of our former letter and assignment. What we want you to do is to say that you will pay us $6,512.50 in lawful money on the completion of part No. 3 of the general specifications and contract. If there is any difference outside of this, it is up to you and the Southern Seating & Cabinet Co. and their bondsmen. What we are after is getting ourselves accepted by you to this amount, and when you do this we will proceed." The contractor responded, on March 9, 1912: "Replying to your favor of the 7th, as I have previously written, I have received all your correspondence and a copy of the assignment referred to by you, whereby the Southern Seating & Cabinet Co. gives you the authority to complete the work and receive payment therefor. As previously stated, I do not recognize you as an independent contractor, because such recognition would release the Southern Seating & Cabinet Co. and their bond from the obligation to me. I am perfectly willing for you to complete the contract for the account of the Southern Seating & Cabinet Company and pay you, under authority of the assignment, the money which may be lawfully due to the Southern Seating & Cabinet Co., under their contract with me, whatever the amount may be under the terms of said contract. I owe the Southern Seating & Cabinet Company approximately $6,512.50. This may not be absolutely correct, but is approximately so. It is understood I am not obligating myself to pay this full amount unless the amount stated is ascertained to be actually due to the Southern Seating & Cabinet Co. It is understood that I will pay you, under authority of this assignment, only the total amount finally due the Southern Seating & Cabinet Co. under their contract. If, however, there is any difference between the amount due you for work and the amount I am due to the Southern Seating & Cabinet Co., which may be recovered by me from the Southern Seating & Cabinet Co. or their bondsmen, I will endeavor to collect the difference, in which event I will pay the same to you."

The foregoing correspondence contains the contract by virtue of which the plaintiff undertook the work upon the building of the Georgia State Savings Association. It is clear from this correspondence that the contractor did not employ the plaintiff to furnish the materials and do the work. The contractor was insistent that the original subcontractor, the Southern Seating & Cabinet

Company, should do this work, and that he would not release it from the contract; and that if the plaintiff undertook to do the work by virtue of the assignment of the Southern Seating & Cabinet Company to it, it would not do it as a contractor under him, but as an employee of the assignor. The contractor never consented that the plaintiff should be substituted for the Southern Seating & Cabinet Company. The plaintiff's assignor had no right to assign its executory contract without the consent of the contractor. *T., T. & G. R. Co.* v. *Bedgood,* 116 *Ga.* 945 (43 S. E. 257). There is nothing in the correspondence between the parties to indicate that the contractor recognized the plaintiff otherwise than as an employee of the Southern Seating & Cabinet Company, doing the work on its behalf by virtue of the assignment of the contract. Such being the case, the plaintiff was not entitled to a lien for the materials furnished, or for work done. *General Supply Company* v. *Hunn,* 126 *Ga.* 615 (55 S. E. 957); *Cambridge Tile Co.* v. *Bank,* 128 *Ga.* 178 (57 S. E. 311).

3. The president of the plaintiff company offered to testify, that after the work had been under way about two months he went to Savannah and ordered his workman to suspend work; that the contractor fretted about it, and the vice-president of the Georgia State Savings Association asked what was the matter, to which he replied that the contractor did not satisfy him that he was going to acknowledge his company on the job; that he remained there two or three days and saw the contractor, and said to him: "Mr. Morgan, I want to know whether you are going to accept me on the job. I want to know whether I will get my money. He said, 'Sure I accept you; go on with the work and you will get your money.' I took his word that he had accepted me." The plaintiff contends that this amounted to a novation of the contract, by the terms of which the contractor accepted the plaintiff as an independent contractor employed by him in the prosecution of the work which he had contracted to perform. On the other hand, it is insisted, in the first place, that, if it amounted to a novation, there was absolutely no consideration for the novated contract; and, secondly, that the statement of the contractor in no wise indicated any departure from his position as contained in his written correspondence. We have carefully compared the testimony excluded by the court with the correspondence evidencing the contract be-

tween the contractor and the plaintiff, and we can not find any substantial variance. In the correspondence the contractor stated that he was willing to recognize the plaintiff on the job as an employee of the subcontractor, but not as an independent contractor; and this testimony is in substantial accord with the contract between the parties, as contained in their original letters. Its exclusion will not require a reversal of the judgment.

           *Judgment affirmed. All the Justices concur.*