## WELLS *v.* FIRST NATIONAL EXHIBITORS' CIRCUIT INCORPORATED *et al.*

1. The evidence being such as to authorize a verdict finding that the plaintiff was entitled to the exclusive privilege of exhibiting certain moving pictures on the conditions stated in the contract between the parties, it was error to grant a nonsuit.
2. A nonsuit was not properly granted on the ground that, as matter of law, there had been such a change in the conditions as to ownership, control, and character of the theaters as to show inability of the plaintiff to comply with his obligations under the contract, and to constitute a waiver by him of performance by the other party to the contract sued on. (Two JJ. dissent.)
3. It was not error to reject amendments offered by the plaintiff, asking that the case be allowed to proceed for the use, alone or jointly with the plaintiff, of a company with which, pending this suit, he had contracted for the exhibition of the pictures in its theaters.

No. 1959.  MARCH 4, 1921.

Equitable petition.  Before Judge Pendleton.  Fulton superior court.  January 22, 1920.

The basis of the litigation is a contract entered into between First National Exhibitors' Circuit Inc., and Jake Wells, under which Wells claimed he had acquired the exclusive right to exhibit within the city of Atlanta, during a given period of time, certain moving pictures, and which contract he alleged the other party had breached by permitting the exhibition of one of the pictures by Criterion Theater Co., in Atlanta, during the period covered by his contract.  A full statement of the contentions will be found in the report of the case when it was here previously.  *Wells* v. *First National Exhibitors' Circuit,* 149 *Ga.* 200 (99 S. E. 615).  The clause of the contract under which the plaintiff claimed the exclusive right to exhibit the pictures in question is as follows: "Undersigned exhibitor hereby leases from First National Exhibitors'

Exchange eight Charlie Chaplin Special Releases six days on each such release on ........ of each week, first week after release date, and agrees to keep and perform the terms herein provided and pay the amounts specified herein. Each subsequent release after the first to be used on the same day or days of the week at the same number of days after release date. Theater owner, Jake Wells. Theater name ........ Seating capacity .......... Street address ....... City Atlanta. Population 175,000. State Georgia. Price of the entire series of eight releases, $2,000.00, to be paid in installments as per contract below and on reverse side." Upon the final trial of the case the plaintiff introduced in evidence a contract made between himself and Carolina Amusement Co., dated December 12, 1919, as follows: "Witnesseth: That whereas Jake Wells has heretofore contracted with the First National Exhibitors' Circuit for certain moving-picture films to be exhibited in the cities of Atlanta and Augusta, Georgia, especially one series known as the Charlie Chaplin releases, and several others; and whereas litigation has been instituted by the said Jake Wells with the said First National Exhibitors' Circuit and the Criterion Theater Company, now pending in Fulton Superior Court, and whereas the Carolina Amusement Company desires to obtain the use of such pictures as may have been contracted for by the said Jake Wells from the said First National Exhibitors' Circuit: Now therefore, in consideration of the payment by said Carolina Amusement Company of the sum of four hundred, ninety-one and 65/100 ($491.65) dollars, the receipt whereof is hereby acknowledged, and the agreement on the part of said Carolina Amusement Company to pay all expenses of said litigation which may have been incurred, and which may hereafter be incurred, including court costs, and the further agreement of said Carolina Amusement Company to execute any and all bonds which may be required during the course of such litigation, and to hold the said Jake Wells harmless from any liability growing out of the execution of any such bonds, even if the said Wells be a party thereto, the said Jake Wells hereby agrees to permit, so far as he is able to do so, the Carolina Amusement Company to use such pictures as may be released to him under any and all said contracts pertaining to the cities of Atlanta and Augusta, the said Carolina Amusement Company paying to him the release price as provided in said contracts; and the said Wells further agrees that upon the

termination of said litigation, or its settlement, which settlement shall be controlled by said Carolina Amusement Company, to execute transfers of such contracts, conveying any and all the interest that he may have therein to said Carolina Amusement Company, without recourse on him. It being distinctly understood and agreed, that, until the final determination of said litigation, the title to said contracts and all rights thereunder shall remain in the said Jake Wells, except as herein stated. And the said Carolina Amusement Company further agrees to hold the said Jake Wells harmless against any claims growing out of said contracts, or the actions now pending or hereafter instituted, by any person or concern whatsoever." He also introduced a subsequent contract made between the same parties on January 19, 1920, as follows: "Whereas the undersigned, Jake Wells and the Carolina Amusement Company, entered into a certain agreement dated the 12th day of December, 1919, covering the exhibition, etc., of certain films known as Charlie Chaplin releases, a copy of which contract is hereto attached and made a part hereof; and whereas certain rights therein sought to be given by Jake Wells to the Carolina Amusement Company may be subject to objection by the owners or distributors of such films: Now therefore, in order to obviate any possible objection of the parties to said agreement as aforesaid, for and in consideration of $5.00 each to the other in hand paid, do now mutually agree to this supplemental agreement, to wit: that in lieu of that part of the original agreement wherein Jake Wells agrees to permit, so far as he is able to do so, the Carolina Amusement Company to use such pictures as may be released to him under the contracts therein referred to, and the said Carolina Amusement Company agreeing to pay him the release price as provided in said contracts, the Carolina Amusement Company now agrees to give Jake Wells the use of the Forsyth or Rialto Theaters in Atlanta, Georgia, and the Augusta Theater in Augusta, Georgia, and Jake Wells agrees to use said theaters for the purpose of exhibiting any and all of the said Charlie Chaplin releases. The Carolina Amusement Company is to have and receive 66 2-3 per cent of the net receipts arising from the exhibition of each of such pictures, and the balance of the net receipts to belong to Jake Wells, the said Wells to pay all charges of the First National Exhibitors' Circuit Inc. It is further mutually agreed that the control of the litigation re-

ferred to in said original agreement shall be exclusively in Jake Wells, and that the title and all interests in said lease contracts shall remain in him." At the conclusion of the introduction of the plaintiff's evidence, the Criterion Theater Company moved for the grant of a nonsuit on the ground that no conspiracy had been proved against it; which motion was overruled. It then moved for the grant of a nonsuit on the ground that under the contracts between Wells and Carolina Amusement Company, above set out, "the plaintiff, having sold the contracts and his interest in the litigation, had no right to proceed in the case and was entitled to no remedy because of said contracts, and that there was no mutuality of remedy as between plaintiff and defendants." Thereupon the plaintiff offered the following amendment to his petition: "Plaintiff asks that said case proceed for the joint use of himself and of the Carolina Amusement Company, a corporation, for the reason that said Jake Wells has entered into contracts with the Carolina Amusement Co.," being the contracts set out above; which amendment having been disallowed, he offered the following amendment: "Plaintiff asks that said case proceed for the use of Carolina Amusement Company, a corporation, for the reason that said Jake Wells has entered into contracts with Carolina Amusement Co.," being the contracts above set out. This amendment was also disallowed, and a nonsuit was awarded. Exception is taken to the judgment disallowing the two amendments to the petition, and to the award of a nonsuit.

*Dodd & Dodd* and *Rosser, Slaton, Phillips & Hopkins,* for plaintiff.

*James A. Branch, Herbert J. Haas, Edgar A. Neely,* and *McDaniel & Black,* for defendants.

PER CURIAM. 1. When this case was first before this court, the contract forming the basis of the suit was construed to be ambiguous; and it was held: "Where the true meaning of such a contract is equivocal, the circumstances existing when the contract was made, as well as the existence of a custom so well known that the parties must have contracted with the intention that it would apply to their contract, may be shown by parol evidence."

2. It was also held: "Where on the interlocutory hearing of an equitable petition to enjoin a breach of a contract upon the ground that the damages which the plaintiff may suffer will be incapable of ready computation and ascertainment, the judge, upon con-

flicting evidence, reaches the conclusion that the plaintiff has established a right to an injunction, and accordingly grants the same, it is erroneous to allow the defendants to dissolve the injunction upon the giving of a bond to answer the final judgment."

3. The evidence on the interlocutory hearing was conflicting as to whether Wells was granted the right to the exclusive presentation of the pictures.

4. On final trial, as shown by the record now before us, the evidence was substantially the same as on the interlocutory hearing, and would have authorized a verdict for Wells, finding that he was entitled to the exclusive privilege of exhibiting the films under the conditions named in the contract.

5. Under the evidence it was error for the court to award a nonsuit on the ground that, as matter of law, there had been such a change in conditions as to ownership, control, and character of the theaters as to show inability of Wells to comply with his obligations under the contract, and to constitute a waiver upon his part of performance by First National Exhibitors' Circuit, the other party to the contract.

6. The judgment disallowing amendments to the petition was not erroneous.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Hill, J., dissenting.*

HILL, J., dissenting. In *Tifton, Thomasville & Gulf Ry. Co.* v. *Bedgood,* 116 *Ga.* 945 (43 S. E. 257), it was held: " Contract rights coupled with liabilities, or involving a relation of personal confidence between the parties, cannot be transferred to a third person by one of the parties to the contract without the assent of the other." Mr. Justice Little, in delivering the opinion of the court in that case, said: " All choses in action arising under contract may be transferred. Executory contracts of a certain character may likewise be transferred. The rule universally recognized is that ' rights arising out of a contract can not be transferred, if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.' Pollock on Contracts (4th ed.), *425, and authorities cited. Mr. Clark in his work on Contracts, p. 524, citing a number of authorities, declares that it is a settled rule that a person can

not assign his liabilities under a contract, or, ' to put the matter from the point of view of the other party to the contract, a person can not be compelled to accept performance of the contract from a person who was not originally a party to it.' The same author, in dealing with this subject, also says that a person ' may so assign with the consent of the other party to the contract; but this is, in effect, a rescission by agreement, and the substitution of a new contract.' All the modern text-writers, so far as we have been able to ascertain, recognize that the doctrine above cited from Mr. Pollock is fully established. See Hammond on Contracts, § 355, and note 48 on page 724; Hollingsworth on Contracts, 295; Harriman on Contracts, 228 (§ 382) ; Anson on Contracts, 287. Possibly the leading modern case in which the doctrine of the assignability of such contracts as this is most fully discussed and applied is that of Arkansas Smelting Co. *v.* Belden, 127 U. S. 379. In the course of the opinion in that case Mr. Justice Gray, who delivered it, in support of the ruling there made says: ' At the present day, no doubt, an agreement to pay money, or to deliver goods, may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him, or by some other stipulation, which manifests the intention of the parties that it shall not be assignable. But every one has a right to select and determine with whom he will contract, and can not have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, ' You have the right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract.' " And see Torsig *v.* Corbin, 142 Fed. 660, where it was said: " A contract by which complainant was given the exclusive right to sell in a specified territory certain patented articles to be sold to him by the other party as required, and by which he agreed to push the sale of the articles, the contract to continue so long as he did so, was in effect one for continuing the personal service on his part, which he could not specifically enforce in equity, for want of mutuality in the remedy." See also Pomeroy's Eq. Jur. § 1405.

The contract in this case between Jake Wells and the First National Exhibitors' Circuit Inc. provided that Wells leased eight Charlie Chaplin releases for six days on each release for the first

week after the release date; and by the terms of the contract Wells agreed to keep and perform the terms of the contract and to pay the amounts specified therein, etc. Wells was designated as the owner of the theater in which the pictures were to be exhibited. Other portions of the contract refer to the prices to be paid, and when payment shall be made; and the agreement is subject to the conditions on the back of the contract. One of the conditions on the back of the contract, which Wells agreed to, is that he is not to show the films leased, in any other theater or theaters or on any other dates than those specified, except with the consent of the lessor in writing. There are other agreements of minor importance.

In view of the authorities cited above, the provisions of the contract, and the evidence, I think that the contract between Wells and the First National Exhibitors' Circuit Inc. is one which is not assignable without the consent of the First National Exhibitors' Circuit; and that consent is wanting, so far as the pleadings and the evidence disclose. The contract is an exclusive one, which could not be assigned by Wells; and although he offered in evidence an agreement between himself and the Carolina Amusement Co., in which he appears to have bought back the rights that he had sold, he is in the position of a purchaser from the third person to whom he had sold. He is not, therefore, in a position to assert that he had the exclusive right to exhibit the films in Atlanta, for the reason that he himself had violated the terms of the contract between himself and the First National Exhibitors' Circuit, which he claims was exclusive; and this being a case in equity, before he can ask equity he must do equity. When Wells sold all of his theaters in Atlanta and his interest in the films to the Carolina Amusement Co., he put it beyond his power to perform his part of the contract with the First National Exhibitors' Circuit, and it could not, under such circumstances, compel specific performance from Wells. Where there is an absence of mutuality of remedy, specific performance can not be enforced. Nor could Wells remedy the situation in which he had placed himself, by making a new contract under the terms of which the Carolina Amusement Co. was to *permit* Wells to use either the Forsyth or Rialto Theaters, which had formerly been owned or leased by Wells, and sold by him to the Carolina Amusement Co., for the reason, as stated above, that the First National Exhibitors' Circuit had the right to rely upon Wells performing the

original contract as agreed, and the duties and liabilities imposed by the contract could not be carried out by exhibiting the films in a theater owned or leased by the Carolina Amusement Co., and conducted by that-company and not by Wells. The First National Exhibitors' Circuit had the right to expect and to *demand* that the contract between it and Wells be carried out in good faith *by Wells,* and no one else, in a theater owned and conducted under his management, where whatever of reputation he had made in the moving-picture world might be of benefit to the First National Exhibitors' Circuit. The contract between the First National Exhibitors' Circuit and Wells was made to the latter individually, and the very nature of the contract involved personal service and exhibiting the films in certain theaters which were then owned and conducted by Wells in Atlanta; and the contract was not, under the above authorities, assignable.

From what has been said and the authorities cited it follows, as a matter of law, that the court did not err in disallowing the offered amendments to the petition, nor in awarding a nonsuit.