### 47568.  MAXEY-BOSSHARDT LUMBER COMPANY, INC. v. MAXWELL

CLARK, Judge. For decision here is a judgment sustaining a motion for summary judgment in behalf of a defendant who was sued upon his endorsement of a promissory note for a corporation of which he was an officer. This promissory note was supplemented by a confirmatory letter on defendant's firm business stationery, which is an exegetic element in our decision to reverse the judgment rendered below.

The affidavit of the plaintiff's president declared he had personally obtained the signatures of defendant to a completed promissory note with defendant signing the completed printed form for the maker corporation as an officer on a debt owed by the company for building supplies and on the reverse thereof as his personal guarantee. Contemporaneously and dated the same day a letter was typed by him on the defendant's firm stationery reading as follows: "In consideration for your not placing for collection with your attorney the amount which I owe you, $2,803.48, I am signing and endorsing a demand

note in that amount this date. I understand also that you and I will agree on amount to be paid in weekly instalments not later than March 27, 1970, and payments to begin on that date and to continue until the full amount is paid. Such amount will not be less than $100 per week nor more than $200 per week. Amounts larger can be paid when funds permit."

The photocopy of this letter in the record shows a typed line containing his personal signature with the typed name of defendant below with no reference to the corporation. On this letter there also appears the typed word "accepted" followed by the signature of plaintiff's president above his typed name.

Pertinent portions of defendant's affidavit stated: "In my capacity as secretary/treasurer ·I signed my name to a blank document which is now described as a promissory note . . . with the understanding that the same was to acknowledge the corporate debt of Maxwell & Sons Manufacturing Company, Inc. and the receipt by the corporation of the materials purchased . . . that it was my understanding that when the same was completed it would reflect my intention that I was signing in my corporate capacity . . . that I placed my signature upon a letter . . . composed and typed by Donald L. Bosshardt for the purpose of setting forth the manner in which the corporation would repay Maxey-Bosshardt . . . that it was not my intent to place my signature in said letter as to cause me to be personally liable for the corporate debt." There was also an averment that he had received no consideration.

Although defendant's affidavit was limited to his versions of the front of the promissory note and to the letter his deposition taken upon cross examination as an adverse party stated the following as to his signature on the back or reverse: "Q. When you did sign this note, what was filled in? A. I think it was blank but I am not positive but he said it was just to· prove that I had gotten the material."

The transcript shows the document to be a printed form of promissory note usually obtained in stationery stores. Concerning the letter there is this significant testimony from the deposition: "Q. It also bears Mr. Bosshardt's signature, doesn't it? A. Yes. Q. And did you see him sign this on that date? A. Yes, sir. Q. Did you read this before you signed this, Plaintiff's Exhibit No. 2, this letter (indicating)? A. There was something other that he left blank, and I'm not positive on this thing. Q. You did sign this letter after he typed it, didn't you (indicating)? A. Yes, that is my signature (indicating)."

The three-page order of the trial judge shows his careful and scholarly study of the case. Relying upon the authority of *Mason v. Blayton,* 119 Ga. App. 203, and *Matthews & Son v. Richards,* 13 Ga. App. 412, he ruled against the defenses that (1) the note was executed in blank, (2) that there was no consideration therefor, and (3) that the obligation is that of the corporation and not of the defendant individually. The order then concluded there was "an issue of fact for determination by a jury as to fraud in the procurement of the note," and denied plaintiff's summary judgment motion. *Held:*

1. The trial court's correct ruling on three of the four legal issues has lightened the labors of this court and lessened the length of this opinion by limitation to the single matter herein considered: Does there exist an issuable fact for determination by a jury?

We recognize that the question of fraud is one which is normally for a jury to determine including whether there has been the required exercise of reasonable diligence to ascertain the truth. *Elliott v. Marshall,* 179 Ga. 639, 640 (176 SE 770). Nevertheless, the decisions have held that one can not close his eyes but must show some fraud perpetrated by the other party which actually prevented him from knowing the provisions of the contract. *Skene v. Jones,* 111 Ga. App. 615 (142 SE2d 412). Also see *Scott v. Fulton National Bank,* 92 Ga. App. 741 (89 SE2d 892). This so-called "blind reliance" doctrine was established by

Chief Justice Richard B. Russell[1] in *Feingold v. McDonald Mtg. & Realty Co.,* 166 Ga. 838 (145 SE 90). Headnote 2 thereof states: "A false statement is not fraudulent when there is no reason why the statement should be believed or acted upon," and the opinion points out that there is no legal relief afforded when one "blindly relied on the representations of the seller as to matters of which he could have informed himself." P. 840.

When our Supreme Court in *B. E. Robuck, Inc. v. Walker,* 212 Ga. 621 (94 SE2d 696) reversed upon certiorari this court's holding in *Walker v. B. E. Robuck, Inc.,* 93 Ga. App. 820 (93 SE2d 178) on the matter of the defense of fraud in the procurement of the defendant's signature to a written contract it stated that the case was controlled by the unanimous ruling in *Lewis v. Foy,* 189 Ga. 596 (6 SE2d 788). It quoted with approval from page 601 of the earlier decision that "the law . . . demands of everyone that he make use of his own facilities to avoid being defrauded. No other rule could safely be adopted and enforced by the court with reference to written instruments. It is essential to all business relationships that the validity and solemnity of written contracts, freely and voluntarily executed, be upheld."

"One having the capacity and opportunity to read a written

---

[1]One of the three great judges who constituted the first bench of this court upon its establishment in 1906. He was the father of the late U. S. Senator, Richard B. Russell, Jr., whose greatness has now been memorialized by a grateful nation giving his name to the Senate Office Building in Washington, D. C., and of Robert L. Russell, who served as Judge of the U. S. District Court for the Northern District of Georgia and later as Judge of the U. S. Court of Appeals for the Fifth Circuit. The latter's son, Robert L. Russell, Jr., served on this bench from 1961 until his untimely death in 1965. Inspiration is derived from reading the memorials of the grandfather in 188 Ga. 869 and of the grandson in 112 Ga. App. XXVII.

contract, and who signs it, not under any emergency, and whose signature is not obtained by trick or artifice of the other party, can not afterwards set up fraud in the procurement of his signature to the instrument." *Truitt-Silvey Hat Co. v. Callaway & Truitt,* 130 Ga. 637 (2) (61 SE 481). The legendary Justice Logan Bleckley said, "Diligence to detect fraud is as much incumbent upon a party who labors under no disability, as to do any other act in which his interest is involved. He must look about him, and see what villainies environ him. If he has been caught in a net he must feel for the meshes." *Sutton v. Dye,* 60 Ga. 449.

In the case under consideration there was no confidential relationship between the seller of merchandise and the defendant officer of the buyer corporation. Defendant's contention that his signatures on the front of the promissory note and on the reverse side were intended to serve as acknowledgment for the corporation's receipt of the merchandise are rebutted by the front being the usual printed promissory note form and general knowledge that the reverse side of such printed forms is used for endorsements of such obligations. It is well known that normal business procedures include assumption of individual liability by officers of their family corporation liabilities. Regardless of defendant's subjective intentions in signing the letter on his firm's letterhead, it cannot serve to contradict the language which states specifically, "I am signing and endorsing a demand note in that amount this date," with his signature above the line containing his typewritten name and with the signed acceptance thereon of the plaintiff.

2. A motion for summary judgment is designed to provide a prompt and inexpensive method of disposing of any cause where the pleadings, depositions, and affidavits clearly show there is no issue of material fact, although the allegations of the pleadings standing alone may raise such an issue. *Dillard v. Brannan,* 217 Ga. 179 (121 SE2d 768); *Scales v. Peevy,* 103 Ga. App. 42 (118 SE2d 193); *General Gas Corp. v. Carn,* 103 Ga. App. 542 (120 SE2d

156). As was said by Judge Cardozo in Richard v. Credit Suisse, 242 N. Y. 346, 350 (152 NE 110, 45 ALR 1041) (1926): "The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial." "Of course it is error to deny trial when there is a genuine dispute of facts; but it is just as much error—perhaps more in cases of hardship, or where impetus is given to strike suits—to deny or postpone judgment where the ultimate legal result is clearly indicated." Arnstein v. Porter, 154 F2d 464, 480 (2d Cir. 1946).

We recognize there is a reluctance to grant summary judgments. This hesitation has existed ever since creation of this procedure in the 1855 English Summary Procedure on Bills of Exchange Act (18 & 19 Vict. c. 67). Nevertheless, if its value as a tool for improving the administration of justice through early disposition of cases without the necessity of having counsel and litigants prepare for a full-scale test and to serve as an adjunct to our invaluable modern discovery procedures, it is essential that in today's lingo we "tell it like it is." Where, as here, a party is the sole witness in his own behalf and so has naturally presented his case in its most favorable light and such showing discloses his defense has no legal validity, it is incumbent upon the courts to rule adversely to him without further ado.

3. "The purpose of the Summary Judgment Act of 1959 is to eliminate the necessity for a trial by jury where, giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (1) (126 SE2d 442)

There being no genuine dispute of the facts in this case, the summary judgment for plaintiff should have been sustained. *Code Ann.* § 110-1203; *Lampkin v. Edwards,*

222 Ga. 288 (149 SE2d 708); *Crawford v. McDonald,* 125 Ga. App. 289 (187 SE2d 542); *Shockley v. Henslee,* 122 Ga. App. 163 (176 SE2d 470).

*Judgment reversed. Eberhardt, P. J., and Deen, J., concur.* ARGUED OCTOBER 5, 1972—DECIDED OCTOBER 25, 1972.

*Skinner, Wilson, Beals & Strickland, John V. Skinner, Jr.,* for appellant.

*James & Johnson, Robert J. James,* for appellee.