### 50930. CENTRAL SOYA COMPANY, INC. v. BUNDRICK et al.

CLARK, Judge.

Is appellant, Central Soya Company, Inc., entitled to priority over other claimant creditors (appellees) in the instant receivership fund as a matter of law by reason of holding a perfected security interest under the U.C.C. in the assets from which the fund was produced? Inasmuch as this question involved neither equitable relief nor application of any rule of equitable procedure, jurisdiction of this appeal was transferred to this court. *Central Soya Co. v. Bundrick,* 234 Ga. 133 (214 SE2d 556).

"It is easy to get totally lost in the morass of petitions, orders, motions, affidavits and issues in this case." (Appellant's brief, page 4). Appellant's counsel has devoted 23 pages of the brief to clarification. This extra effort not only helped our court but drew from both adversary attorneys compliments "for his summary of a most complicated case." Considering that the superior court record of 332 pages shows three plaintiffs, three defendants, and nine intervenors, we join in those

favorable comments as we seek to condense those facts into an understandable summary suitable for a judicial decision.

Finding themselves without sufficient funds to continue their business of growing pigs, the three plaintiffs, S. Snyder Bundrick, and his affiliated corporations, Cordele Milling Company, Inc. and Circle "B" Farms, Inc., filed a petition for receivership on March 22, 1973, seeking an orderly liquidation of that business. Central Soya Company, Inc. ("Central"), Swift and Company ("Swift"), and J. R. Dowdy ("Dowdy") were designated as defendants. During the three previous years plaintiffs had operated a pig growing farm under agreements with Swift and Central. Swift owned and furnished the pigs. Central financed the operations by extending credit for feeds, feed supplements, and medications for the hogs, taking promissory notes and security instruments in plaintiffs' accounts, contract rights, fixtures, equipment, instruments, general intangibles and personalty. After payment to Swift, the balance derived from delivery to Swift of the grown hogs under the "pig feeding agreement" was assigned to Central. The assignment of proceeds as well as the other security interests were properly perfected by Central.

As neither plaintiffs nor Swift is involved in this appeal, we are concerned only with the relative priorities to the receivership fund among appellant Central and five appellees. They are co-defendant Dowdy and four intervenors. These five individuals are farmers who both stored and sold corn to Cordele Milling Company, one of the plaintiff corporations owned by Bundrick. Claims of four intervenors, whom we designate as Dowdy, McGarr, Stewart and a partnership known as "Raines and Woodward," represent debts owed to them for sales of corn used in feeding the growing animals. The claim of the other appellee intervenor, Williams, is based upon the conversion of his corn which had been stored in plaintiffs' warehouse.

Virtually all of plaintiffs' assets were liquidated, yielding a receivership fund of approximately $90,000. Central claims plaintiffs owe it more than $200,000. Thus, if Central's claim is entitled to priority, the claims

of the appellees will not be satisfied.

The arguments of appellees in opposition to Central's assertion of priority may be categorized under principles of estoppel and good faith. Appellees do not contend that Central's security interests are somehow insufficient or that they possess security interests superior to that of Central.

Central raised the question of its priority via five motions for summary judgment, each motion being directed at one of the five appellees. In support of these motions, Central submitted the affidavits of its credit manager who had handled the company's dealings with plaintiffs. In the motions directed against appellees McGarr, Stewart, Raines and Woodward, and Williams, affiant averred, on personal knowledge, the following: that he is personally familiar with plaintiffs' accounts with Central; that plaintiffs are indebted to Central in an amount in excess of $200,000; that Central obtained duly perfected security interests in plaintiffs' contract rights, accounts, fixtures, equipment, instruments, general intangibles and personalty, as well as in an assignment of income under plaintiffs' "Pig Feeding Agreement" with Swift; and that the monies held in the receivership fund are derived from the interests which Central held as collateral. In the motion directed against Dowdy, the fifth appellee, the affiant added that neither Central nor any of its agents made representations to Dowdy regarding the purchase of corn by plaintiffs; that plaintiffs never acted (and were never authorized to act) on behalf of Central; and that Central never entered into a conspiracy with plaintiffs or Swift to defraud Dowdy.

Each appellee filed an affidavit opposing Central's summary judgment motion. The affidavits of McGarr, Stewart and Raines and Woodward stated, in pertinent part, that these appellees sold corn to plaintiffs for use in plaintiffs' pig growing operation; that plaintiffs never intended to pay for the corn; that before plaintiffs purchased the corn they had already fed it to their pigs; that the pigs were sold to Swift; that the monies received from the sale of the pigs are held in the receivership fund; and that Central had constructive notice, if not actual notice, that plaintiffs appropriated the corn.

In his affidavit, appellee Williams averred that plaintiffs appropriated corn which he had delivered to plaintiffs for storage only; that the corn was fed to the pigs which plaintiffs raised; that the pigs were sold to Swift; that the monies received from the sale of the pigs are held in the receivership fund; and that Central had constructive notice, if not actual notice, that plaintiffs appropriated the corn.

In material part, Dowdy's opposing affidavit states that Dowdy undertook to sell corn to plaintiffs in December 1972 at $1.80 per bushel; that plaintiff Bundrick informed Dowdy the price was too high; that Bundrick then contacted Carthell Allen and Wayne Haynie of Central; that Allen and Haynie authorized Bundrick to buy Dowdy's corn at $1.80 per bushel; that Dowdy delivered 11,055 bushels of corn to plaintiffs relying upon the authorization of Central and the representation of Bundrick that Dowdy would be paid; that plaintiffs never intended to pay for the corn; that the corn was fed to the pigs raised by plaintiffs; that the pigs were sold to Swift; that the monies received from the sale of the pigs are held in the receivership fund; and that Central had constructive, if not actual, notice that plaintiffs appropriated the corn. Dowdy further averred that the purchase of his corn was a fraudulent scheme involving plaintiffs, Swift and Central; and that when he sold a previous crop of corn to plaintiffs "under a similar arrangement," he was paid for the corn by Central.

Based upon the pleadings and the supporting and opposing affidavits filed by the parties, the trial court denied Central's summary judgment motions. This appeal followed via certificate of immediate review.

1. Principles of estoppel and good faith underlie the entire Uniform Commercial Code, including the provisions of Article 9. Code Ann. §§ 109A-1—103; 109A-1—203. See also American East India Corp. v. Ideal Shoe Co., 17 UCC Rep. 527, 550 (E.D. Pa. 1975). Thus, a lack of good faith on the part of a secured creditor may alter the priorities which would otherwise be determined by Article 9 provisions. Thompson v. United States, 408 F2d 1075 (8th Cir. 1969).

The good faith of a transaction is peculiarly a

question for the trier of fact. *State Housecraft, Inc. v. Jones,* 96 Ga. App. 182, 184 (99 SE2d 701). Nevertheless, "in whatever guise the issue of fraud may appear in an action, the general basic principles underlying summary judgment apply and, if these are met, the issue of fraud may be summarily adjudicated." 6 Moore's Federal Practice § 56.17[27]. The question thus presented is whether the evidence submitted in support of, and in opposition to, Central's summary judgment motions demonstrates the existence of a factual issue with regard to the good faith of Central.

Through the affidavits of its credit manager, Central set forth facts which, in the absence of bad faith, entitle Central to priority in the receivership fund. Thus, it became incumbent upon appellees to set forth specific facts showing that a genuine issue of fact remains with regard to Central's good faith. Code Ann. § 81A-156 (e); *Stephens County v. Gaines,* 128 Ga. App. 661 (1) (197 SE2d 424). See also *Leachman v. Cobb Development Co.,* 229 Ga. 207, 209 (190 SE2d 537) and *Maxey-Bosshardt Lumber Co. v. Maxwell,* 127 Ga. App. 429 (193 SE2d 885).

" 'The party opposing a motion for summary judgment is entitled to a liberal construction in his favor of the pleadings and evidence.' *Saunders v. Vikers,* 116 Ga. App. 733 (3) (158 SE2d 324)." *Citizens Bank v. Barber,* 123 Ga. App. 507, 508 (2) (181 SE2d 545). Even when applying this principle to the affidavits, we conclude, nevertheless, that appellees have not demonstrated the existence of a genuine issue of fact regarding Central's good faith.

While the appellees' affidavits made statements raising possible suspicions that *plaintiffs* may have acted fraudulently, or in bad faith, no facts were set forth indicating that *Central* acted without good faith. The mere fact that Central stood to gain from plaintiffs' wrongful conduct does not in and of itself show a lack of good faith. "Intangible speculation does not raise an issue of material fact." United States v. Mt. Vernon Milling Co., 345 F2d 404, 407 (7th Cir. 1965). Nor do putative peccabilities.

With regard to appellee Dowdy's affidavit, we add that Central's authorization of plaintiffs' purchase does

not constitute evidence of a fraudulent scheme or conspiracy. In sum, appellees have not set forth specific facts showing the existence of a genuine issue of material fact.

2. "If the movant carries his initial burden, as was done in this case, and the respondent does not present refuting evidence that is adequate to raise an issue of fact, a summary judgment for the movant must be granted. [Cits.]" *Richards v. Tolbert,* 223 Ga. 678 (208 SE2d 486). Here the movant established legal right of priority as a secured creditor superior to unsecured creditors.

3. Williams' reliance upon *Cobb Exchange Bank v. Byrd,* 108 Ga. App. 825 (134 SE2d 871), is misplaced. As Judge (now Justice) Hall observed therein at page 828, that case pre-dated the Uniform Commercial Code. Thus, it no longer serves as binding precedent where there is a perfected security interest.

4. The trial court erred in denying Central's motions for summary judgment.

*Judgment reversed. Pannell, P. J., and Quillian, J., concur.*

SUBMITTED SEPTEMBER 2, 1975 — DECIDED NOVEMBER 20, 1975 — REHEARING DENIED DECEMBER 12, 1975 — 

*Reinhardt, Whitley & Sims, John S. Sims, Jr., James Penland,* for appellant.

*James W. Hurt, Roberts, Roberts & Rainwater, Guy V. Roberts, Jr.,* for appellees.