**DIXIE BONDED WAREHOUSE & GRAIN COMPANY, INC.,**
Plaintiff,

v.

**ALLSTATE FINANCIAL CORPORATION,**
Defendant.

No. C.A. 84–378–3–MAC (WDO).

United States District Court,
M.D.Georgia,
Macon Division.

July 11, 1988.

Robert W. Beynard, Atlanta, Ga., for plaintiff.

Carr G. Dodson, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

Upon defendant Allstate's motion for reconsideration,[1] this court has examined anew the seminal case of *Matter of Samuels & Co., Inc.*, 526 F.2d 1238 (5th Cir. 1976). The court has also considered two cases relied upon by defendant that were not previously cited to the court: *Teton International v. First National Bank of Mission*, 718 S.W.2d 838, 3 U.C.C.Rep. Serv.2d 569 (Tex.App.1986); *Nasco Equipment Company v. Mason*, 291 N.C. 145, 229 S.E.2d 278, 20 U.C.C.Rep.Serv. 761 (N.C.1976).

In *Teton International*, citing Tex.Bus. & Comm. Code Ann. § 2.401(a) (Vernon 1968), the court noted that "the rights of an unpaid seller of goods are 'limited in effect to a reservation of a security interest.'" *Teton International*, 718 S.W.2d at 840, 3 U.C.C.Rep.Serv.2d at 571. The court said that "'[a] lien on the manufactured homes in the inventory is perfected by filing a security agreement with the department....'" *Id.*, quoting Tex.Rev.Civ. Stat.Ann. art. 5221f § 19(i). Finding that a security agreement was neither obtained nor filed, the court held that the unpaid cash seller held no security interests in the mobile homes at issue and that the seller was merely an unsecured creditor. *Teton International*, 718 S.W.2d at 840, 3 U.C.C. Rep.Serv.2d at 571. The court next addressed the following contention: a secured party does not act in "good faith" when it takes a security interest in certain collateral with the knowledge that the seller of such collateral has not been paid. The court stated that the "definition of a good faith purchaser 'does not expressly or impliedly require lack of knowledge of third party claims....'" *Id.* at 840, 3 U.C. C.Rep.Serv.2d at 572, quoting among others *Matter of Samuels & Co., Inc.*, 526 F.2d at 1243-44. Defendant Dixie's contentions go beyond those propounded in *Teton International*. Dixie alleges that defendant Allstate in some manner participated in the generation of certain accounts receivables with the knowledge that no funds were available to pay for underlying goods.

The North Carolina Supreme Court addressed the interplay between sections 2–401 and 9–113 in *Nasco Equipment Co., supra*. The court noted that there existed no explicit agreement by which the parties expressed an intent that title to the goods in question would pass at any time and place other than upon the seller's completion of performance. *Nasco Equipment Co.*, 291 N.C. at 155, 229 S.E.2d at 285, 20 U.C.C.Rep.Serv. at 767. Thus, the court found no merit in the seller's argument in reliance upon the old "cash sale" doctrine. *See* Discussion *infra*. The court held that the Article Two security interest held by the seller was subject to an Article Nine security interest unless one of the conditions stated in § 9–113 was established. Finding that the debtor did acquire possession of the goods, the court stated that without a security agreement to render its security interest enforceable, the secured party prevails. *Id.* at 155, 229 S.E.2d at 285, 20 U.C.C.Rep.Serv. at 767–68. The court made no mention of any allegation regarding the good faith of either the debtor or the secured party. Nor did the court mention the manner, lawful or otherwise, by which the debtor obtained possession. The absence of those allegations made necessary the existence of a security agreement, and the absence of a security agree-

---

1. This court's prior order is published at 687 F.Supp. 589 (M.D.Ga.1988). Therein, the court denied defendant Allstate's motion for summary judgment on defendant Dixie's claim founded upon the Uniform Commercial Code.

ment in this situation was fatal to the unpaid seller's claim.

In *Matter of Samuels & Co., Inc.*, the court stated that the unpaid cash seller's interest in the property upon delivery "was limited to a security interest subject to Article Nine, §§ 2.401(a); 9.113 . . . ." *Matter of Samuels & Co., Inc.*, 526 F.2d at 1247. The corresponding Georgia statutes are O.C.G.A. §§ 11–2–401(1) and 11–9–113. Section 11–2–401(1) reads in relevant part as follows: "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." With this language, the drafters of the Code de-emphasized the importance of "title" to goods and minimized the effects of the old "cash sale" doctrine. *See Matter of Samuels & Co., Inc.*, 526 F.2d at 1246–47. The unpaid cash seller's section 11–2–401(1) interest, an interest which arises not by consent but by operation of law, is subject to a valid and perfected Article Nine security interest. *Id.* at 1247. An unpaid cash seller may not defeat a secured party's interest by retention of "title." *Id.* at 1246. The other Code provision cited by the court, a provision corresponding to section 11–9–113 in the Georgia Code, reiterates the priority of an Article Nine security interest over an interest arising under Article Two. However, that provision explains that the relative priorities of the parties may be altered if the "debtor does not have or does not lawfully obtain possession of the goods . . . ." O.C.G.A. § 11–9–113. In such an event, "(a) [n]o security agreement is necessary to make the security interest [of the unpaid cash seller] enforceable; and (b) [n]o filing is required to perfect the security interest . . . ." O.C.G.A. § 11–9–113(a) and (b).

The court's citation of these two Code provisions clearly indicates that some interest arises in favor of an unpaid cash seller of goods. As the discussion above indicates, the two cases relied upon by defendant do not hold otherwise. A careful reading of *Matter of Samuels & Co., Inc.*, further shows that this interest is something other than a purchase money security interest ("PMSI"). *See* O.C.G.A.

§ 11–9–312. A properly perfected PMSI has priority over any other properly perfected Article Nine security interest. Therefore, if the section 2–401 interest was merely the precursor to a PMSI, there would be no reason for the court to state that "the validity of [a secured party's] Article Nine interest becomes crucial" when considering the relative priorities between the holder of an unperfected section 2–401 interest and an Article Nine secured party. *See Matter of Samuels & Co., Inc.*, 526 F.2d at 1247.

This court again holds that section 11–2–401 creates in favor of the unpaid cash seller an unperfected interest which, though generally subject to a valid and perfected Article Nine security interest, may on some rare occasions provide relief to the aggrieved cash seller who can substantiate allegations either that a secured party acted in other than good faith or that one of the conditions described in section 11–9–113 has been met. Thus, defendant Allstate's motion to reconsider is hereby DENIED. Defendant's alternative request, that this court certify pursuant to 28 U.S.C. § 1292(b) an interlocutory appeal is likewise DENIED. The evidence determinative of Dixie's claim under the Uniform Commercial Code ("UCC") is factually similar if not identical to evidence that Dixie will present on some of its other claims. Thus, this case would have continued and the evidence presented would have remained the same regardless of the court's ruling on Dixie's UCC claim.

SO ORDERED, this 11th day of July, 1988.