**Edward C. O'BRIEN, Plaintiff,**

v.

**UNION OIL COMPANY OF CALIFORNIA, Defendant.**

**Civ. A. No. 1:86–CV–1904–JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 20, 1988.

Richard M. Skelly, Atlanta, Ga., for plaintiff.

John L. Watkins, Long, Aldridge & Norman, John Garrett Parker, Hansell & Post, Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This matter is before the court on the parties' cross motions for summary judg-

ment, Fed.R.Civ.P. 56, and plaintiff's motion for leave to amend his complaint, Fed. R.Civ.P. 15. Both parties seek summary judgment in their favor on all counts of plaintiff's complaint.[1] Count I of plaintiff's complaint alleges violations of the Georgia Gasoline Marketing Practices Act (GMPA), O.C.G.A. § 10–1–230, et seq. Count II alleges common law fraud, O.C.G.A. § 51–6–1, et seq. Finally, Count III alleges a cause of action under the Georgia Fair Business Practices Act, O.C.G.A. § 10–1–390, et seq. By his motion for leave to amend, plaintiff seeks leave to add a fourth count for breach of contract and a fifth for unfair business practices. The parties' motions will be considered seriatim following a recitation of the relevant facts.

## I. STATEMENT OF FACTS.

The following facts are based on this court's review of the pleadings of record including the parties' briefs and uncontroverted statements of material facts[2] as well as the deposition testimony of plaintiff Edward C. O'Brien and the exhibits attached thereto.

The parties to this action are plaintiff Edward C. O'Brien, a resident of Cobb County, Georgia, and defendant Union Oil Company of California, a corporation organized and existing under the laws of the State of California. At all times relevant to the instant action, plaintiff was an automotive gasoline dealer operating a gasoline service station known as "South Four Lane 76 Service," located in Marietta, Georgia.

This court's jurisdiction is based upon 28 U.S.C. § 1332.

This action arises out of the manner in which the parties' business relationship came to a close.[3] Beginning in 1978, plaintiff executed with defendant a series of retail dealer motor fuel purchase agreements. In addition, plaintiff and defendant entered into a series of lease agreements whereby plaintiff leased from defendant the service station building and accompanying fixtures. Both agreements were originally executed and subsequently renewed contemporaneously over the years. The last such renewal, entered into in February of 1983, was to take effect June 1, 1983 and conclude May 31, 1986. Defendant's Statement of Material Facts, ¶ 3; Exhibits 1 and 2.

The events which give rise to this action transpired less than one year after the final renewal became effective. In the first few months of 1984, plaintiff decided that he no longer wished to be involved in the retail gasoline business and thus listed the business for sale through a brokerage firm. Soon thereafter, the firm secured for plaintiff a proposed purchaser who agreed to pay plaintiff approximately $32,000 for his business.[4] Exhibit 5. This proposed sale was made contingent upon defendant's approval of the proposed purchaser as a retailer/tenant. Exhibits 5A and 5B. The terms of the proposed sale are outlined in an "offer to purchase" executed by plaintiff and the proposed purchaser. Id.

Soon after the offer to purchase was executed, plaintiff gave notice to defendant

---

1. Plaintiff's complaint was originally filed July 25, 1986 in the Superior Court of Cobb County, Georgia. By petition filed August 19, 1986, the action was removed to this court.

2. Pursuant to Local Rule 220–5(b)(1), each party in moving for summary judgment submitted to the court "a separate and concise statement of material facts as to which he contends there is no genuine issue to be tried." Neither party complied with subsection (b)(2) of that rule, however, which requires that one responding to a motion for summary judgment submit a corresponding statement of facts addressing that filed by the movant. Because the court has determined that the separate statements of material facts do not conflict, the court deems all

facts therein to have been admitted by both parties. Local Rule 220–5(b)(2).

3. Where the facts alleged by both parties parallel, the court will not cite their source. Citations will follow the uncontroverted facts alleged by each party deemed admitted pursuant to Local Rule 220–5(b)(2), however.

4. The parties refer to the sale of plaintiff's "business." The record shows, however, that the $32,000 offered by this proposed purchaser represented only the value of the inventory and equipment owned by plaintiff and used by him in connection with the operation of the service station. Defendant's Statement of Material Facts, ¶ 7; Plaintiff's Deposition at 35–36.

of his intent to leave the business and of the proposed sale. Notice was given at a brief meeting between plaintiff and defendant's sales representative, Dick Schriener. Several weeks thereafter, Schriener met a second time with plaintiff at which time he presented to plaintiff a "mutual termination agreement" which would serve to cancel both the lease and the purchasing agreement. At that same time, plaintiff was informed that the proposed purchaser would not be approved by defendant.[5] Plaintiff thus declined to sign the mutual termination agreement. Defendant's Statement of Material Facts, ¶ 17; Plaintiff's Deposition at 72, 82.

In June of 1984, Schriener died. His position as defendant's sales representative was then filled by Lewis Hargrove. At a meeting between plaintiff and Hargrove, plaintiff inquired into (1) whether defendant was aware of any prospective purchasers of plaintiff's business, and (2) whether defendant would consider selling the service station building and accompanying fixtures to plaintiff. At a subsequent meeting several weeks later, Hargrove responded (1) that defendant had no proposed purchasers for plaintiff's business; (2) that defendant would not consider selling the service station building; and further (3) that plaintiff's lease and purchasing agreement would not be renewed after they expired May 31, 1986. Some four months later, on December 3, 1986, plaintiff executed with defendant a "mutual termination agreement" cancelling both the purchasing agreement and the lease retroactive to November 30, 1984. This litigation ensued.

## II. CONCLUSIONS OF LAW.

### A. *Fed.R.Civ.P. 56.*

Before turning to the merits of the parties' motions, the court will set forth the standard controlling practice under Fed.R. Civ.P. 56. Courts may grant motions for summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists in the case. *Hines v. State Farm Fire and Casualty Company*, 815 F.2d 648 (11th Cir.1987). The burden then shifts to the responding party to identify and produce specific evidence establishing the existence of every element essential to that party's case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### 1. THE GEORGIA GASOLINE MARKETING PRACTICES ACT.

■ Count I of plaintiff's complaint alleges violations of the Georgia Gasoline Marketing Practices Act (GMPA). Specifically, plaintiff contends that in refusing to approve the proposed purchaser as a retailer/tenant and in deciding against renewing plaintiff's lease, defendant committed acts proscribed by § 10–1–233. This section provides in relevant part:

> It shall be a violation of this article for any gasoline distributor who has a marketing agreement with a gasoline dealer, directly or indirectly, through any officer, agent, or employee, to commit any of the following acts: (1) to terminate or cancel such marketing agreement without good cause prior to the expiration date; [or] (6) to require or prohibit any change in management of any gasoline dealer unless such requirement or prohibition of change shall be for good cause, which cause shall be stated in writing by the gasoline distributor, ....

---

5. Plaintiff's statement of material facts provided, "No cause for the stated disapproval of the proposed purchaser was ever given." Plaintiff's Statement of Material Facts, ¶ 14. Despite this assertion, the same document also provides, "At that [second] meeting and at meetings preceding it, defendant's representative Schriener informed [plaintiff] that he must first offer the station to other prospective purchasers whom he had on a [waiting] list." *Id.*, ¶ 12. This latter statement is inconsistent with plaintiff's own deposition testimony, however, which indicates that the existence of the waiting list was mentioned only at the first meeting between plaintiff and Schriener. Plaintiff's Deposition at 84.

(a) O.C.G.A. § 10–1–233(1).

Plaintiff conclusively alleges that the above-described acts by defendant constitute a violation of § 10–1–233(1). Plaintiff's Brief at 5.[6] This claim is made despite the presence of evidence indicating that plaintiff executed the mutual termination agreement on his own accord. Defendant's Statement of Material Facts, ¶ 23; Plaintiff's Deposition at 110–11. Moreover, plaintiff does not allege that defendant's acts forced him to execute the termination agreement.[7] To the contrary, the record presents no reason why plaintiff could not have continued to do business under the purchasing agreement and lease until their agreed-upon expiration date in May of 1986. Inasmuch as § 10–1–233(1) clearly contemplates unilateral termination decisions, the court agrees with defendant that plaintiff has failed to meet his burden of establishing a cause of action under this section. Even liberally construing plaintiff's complaint as asserting a theory of constructive termination, plaintiff in any event fails to elaborate on this alleged violation or otherwise address defendant's motion for summary judgment on this issue. Accordingly, defendant's motion for summary judgment on this issue is GRANTED and plaintiff's motion for summary judgment on this issue is DENIED.

(b) O.C.G.A. § 10–1–233(6).

█ In addition to alleging that defendant's acts amounted to an unilateral termination of the purchasing agreement, plaintiff asserts that defendant also effectively prohibited a "change in management" of plaintiff's business without good cause[8] within the meaning of § 10–1–233(6). It is plaintiff's contention that this violation occurred when defendant decided not to approve the proposed purchaser as a retailer/tenant. Specifically, plaintiff bases his theory of recovery on two facts. First, since the sale of plaintiff's business was contingent upon defendant's acceptance of the proposed purchaser, defendant's decision effectively prevented its occurrence. Second, plaintiff was the sole proprietor of his business and therefore he alone constituted its management. Thus, it is theorized that when defendant prevented plaintiff from selling his business, it necessarily prohibited a change in management within the meaning of § 10–1–233(6). Plaintiff's Brief at 9.

While plaintiff cites no authority supportive of this theory, he provides the court with his interpretation of the "clear intent" behind § 10–1–233(6). "The provisions of both statutes were designed to protect the interests of a retail dealer." *Id.* The court agrees. It is well established that the Act was intended to protect retailers from what the Georgia Legislature perceived to be unfair marketing practices by large gasoline industries. *See Exxon Corp. v. Georgia Association of Petroleum Retailers,* 484 F.Supp. 1008 (N.D.Ga.1979), *aff'd,* 644 F.2d 1030 (5th Cir.1981). While the court questions whether the legislature "clearly intended" to regulate the present situation through § 10–1–233(6), the court believes that the relevant statutory language is sufficiently broad to include such an application. The statute relates to any action by a gasoline distributor which *directly or indirectly* requires or prohibits "any change in management of any gasoline dealer." Though the more narrow construction of

---

6. Inasmuch as this is the court's first reference to plaintiff's brief, the court will take this opportunity to direct the attention of plaintiff's counsel to the mandates of Local Rule 200–1(c) (margins) and (d) (numbering). Reference should also be made to paragraph two of the court's Case Instructions.

7. Plaintiff states that defendant's decision not to renew the lease served to deprive him of the opportunity to continue his business. Plaintiff's Statement of Material Facts, ¶ 18. As noted below, however, plaintiff fails to explain why he could not continue to operate the station until

the end of the lease term. If anything, defendant's decision regarding plaintiff's lease gives rise to an action under § 10–1–233(2) which governs failure to enter into subsequent agreements; though it would seem that defendant's obligations under that subsection were eliminated by the mutual termination agreement.

8. It is uncontested that defendant at no time provided plaintiff with a written statement describing its reasons for not approving the proposed purchaser as a retailer/tenant. Plaintiff's Statement of Material Facts at 15.

the term "management" urged by defendant is not without merit, the court is struck by the phrase "directly or indirectly" underscored above. Indeed, even construing the term "management" as meaning merely the manner in which the business is planned, organized, coordinated, etc., the court cannot say that a change in management as so defined was not indirectly prohibited by defendant's acts. The court thus agrees with plaintiff that the acts complained of are governed by § 10–1–233(6) [9] and will therefore now consider defendant's alternative ground for summary judgment on this count; i.e., that the Act is unconstitutional in whole or in relevant part.

(c) Due Process.

■ It is defendant's contention that § 10–1–233 of the Act is violative of the Constitution of the State of Georgia and is therefore void. Specifically, defendant argues that the gasoline industry is not affected with a public interest and thus § 10–1–233, by purporting to regulate various aspects of the relationship between gasoline distributors and retailers, works an infringement on the distributor's right to contract without due process of law.

As defendant correctly notes, Georgia enactments purporting to regulate various aspects of the gasoline industry have recently been the subject of a number of challenges regarding their validity under the due process clause of the Georgia Constitution. Most notable are the Georgia Supreme Court's decisions in *Batton–Jackson Oil Company, Inc. v. Reeves*, 255 Ga. 480, 340 S.E.2d 16 (1986) and *Strickland v. Ports Petroleum Company, Inc.*, 256 Ga. 669, 353 S.E.2d 17 (1987). Any discussion of this subject should begin, however, with the Georgia Supreme Court's opinion in *Harris v. Duncan*, 208 Ga. 561, 67 S.E.2d 692 (1951).

In *Harris*, the court considered a due process challenge to the Georgia Milk Con-

trol Law, an act which regulated various aspects of the milk industry. The court noted that, among other things, the Milk Control Law engaged in price-fixing, and thus imposed restrictions on a fundamental aspect of the constitutionally protected freedom of contract; i.e., the right of producers and consumers to agree on a price for goods or services. The court then noted that such regulatory legislation is constitutionally permissible only if the industry affected is one "affected with a public interest," and, after finding that the milk industry did not fall within this category, struck the Milk Control Law as violative of the Georgia Constitution's due process clause. The court reaffirmed this application of the Georgia Constitution's due process clause soon thereafter in *Cox v. General Electric Co.*, 211 Ga. 286, 85 S.E.2d 514 (1955): "The right to contract and for the seller and purchaser to agree upon a price is a property right protected by the due process clause of our constitution, and unless it is a business 'affected with a public interest' the General Assembly is without authority to abridge that right." *Cox*, 211 Ga. at 289, 85 S.E.2d 514 (citing *Harris*).

Almost thirty years later, the Georgia Supreme Court again had occasion to review the constitutionality of legislation purporting to regulate various aspects of a particular industry. In *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252, 297 S.E.2d 250 (1982), the challenged enactment was the Georgia Motion Picture Fair Competition Act, which had as its legislative purpose to regulate the manner in which motion pictures are distributed for exhibition to the public in the State of Georgia. In a brief, one paragraph discussion, the court upheld the Act as a "purely economic regulation" bearing a "rational relation to a proper legislative purpose." Despite the court's earlier holding that "the right to contract is a property right protected by

---

9. Defendant contends that such a holding would lead to the conclusion that "gasoline distributors have no right to select the persons with whom they execute marketing agreements." Defendant's Brief at 17. As noted above, however, the statute in question requires merely that the prohibition of any change in management be for good cause "which cause shall be stated in writing." O.C.G.A. § 10–1–233(6).

the due process clause" of the Georgia Constitution, the *Paramount* court declined to follow *Harris*. Without explanation and over the strong dissent of Justice Weltner,[10] the majority[11] found the *Harris* opinion limited in its holding to those instances where the challenged legislation imposed price controls on the industry affected. *But see Georgia Franchise Practices Commission v. Massey–Ferguson, Inc.*, 244 Ga. 800, 802, 262 S.E.2d 106 (1979) (applying *Harris* doctrine to non-pricefixing legislation); *see also General GMC Trucks, Inc. v. General Motors Corp.*, 239 Ga. 373, 237 S.E.2d 194 (1979).

Finally, in the aforementioned *Batton–Jackson Oil Company, Inc. v. Reeves* and *Strickland v. Ports Petroleum Company, Inc.* cases, the Georgia Supreme Court sustained constitutional challenges to legislation purporting to regulate various aspects of the gasoline industry within the State of Georgia. In *Reeves*, the challenged legislation was § 10–1–234 of the GMPA. In reviewing the challenge, the court returned to the holding of *Harris v. Duncan* and, after concluding that the challenged statute abridged the right to contract freely, found the statute violative of due process "in that it seeks to regulate a business not affected with a public interest." Similarly, in *Strickland*, the court reaffirmed its previous holding that the gasoline industry is not affected with a public interest and went on to sustain an identical challenge to § 10–1–254 of the Georgia Below Cost Sales Act. The court again relied upon the *Harris* court's holding that freedom of contract is a property right protected by the Georgia Constitution's due process clause.

It is in view of these somewhat inconsistent opinions that the court must determine the constitutionality of § 10–1–233(6) of the GMPA. On the one hand, it is clear that the gasoline industry is one not affected with a public interest. As defendant notes, any attempt at regulating the manner in which members of the gasoline industry

may deal with each other thus automatically arouses suspicion. On the other hand, there is the *Paramount* court's restrictive reading of the *Harris* opinion and subsequent decision upholding the Motion Picture Fair Competition Act. This decision is particularly troublesome in light of the similar goals behind enactment of the Motion Picture Act and the GMPA. For the reasons set forth below, however, the court finds that the *Harris* opinion provides the proper analysis to be applied in this instance and further that § 10–1–233(6) is unconstitutional under the due process clause of the Georgia Constitution in that it purports to regulate an industry not affected with a public interest.

As alluded to previously, one purpose behind enactment of the GMPA is the promotion of the free flow of gasoline within the State of Georgia. Sound business principles suggest that defendant and other gasoline distributors and plaintiff and his fellow retailers share a common economic interest consistent with this goal. It must therefore be believed that they will interact in a manner which would serve to further this interest and thus an important legislative purpose behind enactment of the GMPA. In the case at bar, if defendant has determined that it would sell a greater quantity of gasoline by requiring or prohibiting a change in the management of plaintiff's station, it follows that allowing it to do so would further legislative intent.

Second, § 10–1–233(6) is contrary to public policy in that it adversely impacts upon the rights of gasoline distributors with respect to the individual personal service contracts between themselves and their retailers. Georgia law treats such contracts as unique, non-assignable agreements between the contracting parties. *See Tifton T & G Railway Co. v. Bedgood & Co.*, 116 Ga. 945, 43 S.E. 257 (1903); *Sims v. Cordele Ice Co.*, 119 Ga. 596, 46 S.E. 841 (1904); *Cowart v. Singletary*, 140 Ga. 435, 79 S.E. 196 (1913); *Dennard v. Freeport*

---

**10.** "What our constitution prohibits is not just the regulation of *price*, but any intrusion into the private affairs of individuals regulating their activities where no state interest is involved."

*Paramount*, 250 Ga. at 255, 297 S.E.2d 250 (Weltner, dissenting).

**11.** Without the participation of Justices Marshall or Bell.

*Minerals Co.,* 250 Ga. 330, 297 S.E.2d 222 (1982); *Adair v. Smith,* 23 Ga.App. 290, 98 S.E. 224 (1918); *Wheeler v. Pan–American Petroleum Corporation,* 48 Ga.App. 378, 172 S.E. 826 (1933); *Decatur North Associates, Ltd. v. Builders Glass, Inc.,* 180 Ga. App. 862, 350 S.E.2d 795 (1986). The court believes, therefore, that the Georgia courts would look with strong disfavor upon legislation forcing a party to deal with another with whom he did not bargain and in whom he had not entrusted the rights and duties under the contract in question. For these reasons, the court finds that the Georgia Supreme Court's *Harris* decision governs the disposition of this action. Accordingly, defendant's motion for summary judgment on Count I of plaintiff's complaint is GRANTED and plaintiff's motion for summary judgment on Count I is DENIED.

## 2. FRAUD.

Count II of plaintiff's complaint alleges fraud on the part of defendant. It is contended that during the course of events culminating in the termination of the parties' business relationship, defendant, through its agents Schriener and Hargrove, committed various acts intended to defraud plaintiff. Specifically, it is alleged that (1) defendant's misrepresentations concerning the existence of a waiting list of potential purchasers and (2) its subsequent refusal to allow plaintiff to purchase the station amount to common law fraud. Plaintiff's Brief at 11–13.

Under Georgia law, the elements of an action for fraud are (1) a false representation of material fact made by the defendant; (2) *scienter;* (3) an intention to induce the plaintiff to act or refrain from acting in reliance thereon; (4) justifiable reliance by the plaintiff; and (5) damages to the plaintiff. *Tolar Construction Company v. GAF Corp.,* 154 Ga.App. 127, 267 S.E.2d 635 (1980); *see also* O.C.G.A. §§ 23–2–52 and 51–6–2.

(a) The Waiting List.

■ The primary basis for defendant's motion for summary judgment on this basis of plaintiff's fraud count is the asserted lack of detrimental reliance on plaintiff's part. Defendant's Brief at 19–21; Reply at 19–23. It is plaintiff's position that defendant's representation, through its agent Schriener, concerning the existence of a waiting list of potential purchasers put plaintiff "in a position of delaying and awaiting ... the list ... [and] prevented plaintiff from anticipating the need [for] or effecting any protection for his own interests." Plaintiff's Brief at 11, 12. Plaintiff does not present or otherwise identify any evidence supportive of this assertion, however. To the contrary, the court's review of plaintiff's deposition testimony suggests that even after Schriener's alleged statement concerning the waiting list, plaintiff continued his efforts to gain defendant's approval of the sale. Moreover, plaintiff's testimony indicates that, despite the alleged representation concerning the waiting list, Schriener did not foreclose on the possibility of plaintiff's proposed purchaser gaining approval. Plaintiff's Deposition at 67, 68–69. *See also* Complaint, ¶ 3(c)–(d). This evidence is inconsistent with plaintiff's assertion that solely because he was told by Schriener of the waiting list, he delayed to some unspecified detriment "the pursuance of the sale of his business." Plaintiff's Brief at 11. In any event, plaintiff's failure to produce or otherwise identify evidence of his detrimental reliance upon defendant's alleged misrepresentation constitutes a failure "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he would] bear the burden of proof at trial." [12] *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. Accordingly, the court finds that defendant has demonstrated its

---

12. Though in his complaint, plaintiff alleges that he relied to his detriment on defendant's misrepresentation, he fails to allege that the misrepresentation was made with the intent to elicit such reliance. This being an essential element to a fraud claim, O.C.G.A. § 51–6–2(a); *Tolar Construction Company,* it would appear that Count II of plaintiff's complaint would likewise be subject to dismissal for failure to state a claim upon which relief can be granted. *See Camp Realty Company v. Jennings,* 77 Ga.App. 149, 151, 47 S.E.2d 917 (1948) (intent to deceive and cause reliance must be alleged in complaint).

entitlement to summary judgment on this aspect of plaintiff's fraud claim.

### (b) Defendant's Refusal to Allow Plaintiff to Purchase the Station.

■ Plaintiff likewise alleges fraud on defendant's part in defendant's refusal to allow plaintiff to purchase the service station after his proposed purchaser was rejected. Specifically, it is contended that both the parties' January 19, 1983 renewal contract and federal law required that plaintiff be afforded an opportunity to purchase the service station. Thus, the argument goes, defendant's refusal to afford plaintiff this opportunity constitutes "a fraudulent attempt by the defendant to avoid its obligations at law and under its contract." Plaintiff's Brief at 12. This argument must fail. While these allegations may well give rise to actions for breach of contract in violation of federal law, plaintiff fails to allege any acts by defendant which could be construed as fraudulent. This is particularly so in light of plaintiff's contract allegations; inasmuch as he was a party to this contract, he must be assumed to have been aware of his rights under it. *See Maxie–Bosshardt Lumber Company v. Maxwell*, 127 Ga. App. 429, 193 S.E.2d 885 (1972) (no fraud when plaintiff should have known of falsity); *see also Blanchard v. West*, 115 Ga. App. 814, 156 S.E.2d 164 (1967) (one with opportunity to learn truth has no action for fraud). In any event, it is not alleged that defendant represented to plaintiff that he had no right to attempt to purchase the service station, and thus there was no representation, false or otherwise, upon which plaintiff could rely to his detriment. Accordingly, defendant's motion for summary judgment on Count II of plaintiff's complaint is GRANTED while plaintiff's motion for summary judgment on this court is DENIED.

### 3. THE GEORGIA FAIR BUSINESS PRACTICES ACT.

■ Count III of plaintiff's complaint purports to state a claim under the Georgia Fair Business Practices Act. O.C.G.A. § 10–1–390, *et seq.* Plaintiff bases this claim on the same set of allegations on which he bases his claims under Counts I and II.

The Georgia courts have determined that the objective of the Georgia Fair Business Practices Act is the elimination of deceptive acts and practices in the consumer marketplace. *Zeeman v. Black*, 156 Ga.App. 82, 273 S.E.2d 910 (1980). It has likewise been determined that recovery under the Act requires at least (1) that the plaintiff be a consumer and (2) that the act complained of had or has a potential harmful effect on the general consuming public. *Id.*

Plaintiff asserts without supportive authority or discussion that he has standing to sue under the Act because he was an occasional consumer as well as retailer of defendant's products. Plaintiff's Brief at 13. Even so, it is evident that no recovery may be had under the Act because the acts complained of occurred in an essentially private transaction. There is no allegation or reason to believe that defendant's acts, even if unfair and deceptive, had any impact on the consumer marketplace. As the Georgia Court of Appeals noted in *Zeeman*, "any act or practice which is outside [the context of the public consumer marketplace], no matter how unfair or deceptive, is not directly regulated by the [Act]." Defendant is therefore entitled to summary judgment on this issue as well. Accordingly, plaintiff's motion for summary judgment on Count III is DENIED and defendant's motion for summary judgment on Count III is GRANTED.

### B. *Leave to Amend.*

■ As mentioned previously, plaintiff seeks leave to amend his complaint to add a Count IV (breach of contract) and a Count V (unfair business practices).[13] In support

---

**13.** Though it is by no means clear, the court assumes that plaintiff's proposed Count V is brought pursuant to the Federal Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801, *et seq.* The proposed count provides only that "[t]he actions of the defendant ... constitute an unfair business practice as contemplated by Georgia law and under the provisions of federal

of his motion, plaintiff alleges that "during the course of discovery in this action, there was produced a contract between the plaintiff and the defendant ... [which] incorporated within it provisions of the Federal Gasoline [sic] Marketing Practices Act. That Act, as incorporated in the contract, provides additional rights and remedies to the [plaintiff]...." Brief at 1. Defendant has vigorously opposed plaintiff's motion.

The decision whether to grant leave to amend is within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Though this circuit follows a policy of liberal amendment, *United States of America v. Aetna Insurance Co.*, 831 F.2d 978, (11th Cir.1988), the granting of such a motion is by no means automatic. *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir.1979). In reviewing a motion for leave to amend, the district court may consider several factors, including undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the non-moving party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In addition, courts may consider such factors as the amount of time and opportunities the movant has had to seek leave to amend, whether the proposed amendment is such that could have been added shortly after the complaint was filed, whether allowance of the proposed amendment would complicate trial preparation by requiring additional discovery, whether the movant has attempted to justify any delay, and whether the impetus behind the filing of the motion was the prior filing of a motion for summary judgment after full discovery. *See National Service Industries, Inc. v. Vafla Corp.*, 694 F.2d 246 (11th Cir.1982); *Schneider v. Russell Corp.*, 823 F.2d 422 (11th Cir.1987); *Addington v. Farmers' Elevator Mutual Insurance Co.*, 650 F.2d 663 (5th Cir.1981); *Staggs v. Chrysler Corp.*, 678 F.Supp. 270 (N.D.Ga.1988); *Ferrell v. Busbee*, 91 F.R.D. 225 (N.D.Ga. 1981). In the case at bar, the court believes several of the above-listed factors favor the denial of plaintiff's motion.

First, plaintiff's motion for leave to amend is untimely. It comes one year and three months after the filing of the complaint and nearly three months after the close of a year-long discovery period. This is significant since plaintiff claims that the production of certain documents during discovery prompted the filing of this motion. Moreover, plaintiff has not attempted to justify this delay. *See Addington*, 650 F.2d at 666.

Second, plaintiff's motion was filed without leave of court. The Local Rules of this district require that such motions "be filed WITHIN 100 DAYS after the complaint is filed, unless the filing party has obtained prior permission of the court to file later (emphasis in original)." Local Rule 220–1(a)(2). Third, it appears that the facts necessary to support plaintiff's proposed amendments were available to plaintiff early in the discovery period, if not before this action was commenced. The record indicates that plaintiff was apparently in possession of the documents in question as early as March 29, 1985,[14] but in no case later than early July of 1987; i.e., the date on which they were originally produced. These circumstances are likewise suggestive of dilatory motive. *See Mills v. Fitzgerald*, 668 F.Supp. 1554 (N.D.Ga.1987). Finally, it is clear that defendant would be prejudiced by the allowance of plaintiff's proposed amendments at this late date. *See National Distillers and Chemical Corp. v. Brad's Machine Products, Inc.*, 666 F.2d 492 (11th Cir.1982). In addition to having to amend its answer, defendant would be placed in a position of having to defend against two new and distinct legal claims brought long after the close of dis-

---

statutes." *See* Local Rule 200–1(e) ("When Acts of Congress or sections thereof are cited, counsel shall include the corresponding United States Code citation"). The court bases its assumption on the fact that reference is made to the PMPA in plaintiff's proposed Count IV.

**14.** On that date, counsel for plaintiff wrote a letter to the assistant counsel for defendant to which he attached copies of both the service station lease and the retail dealer motor fuel purchase contract. This action commenced over one year later.

covery. Moreover, plaintiff seeks leave to assert these new claims only after defendant's motion for total summary judgment on the three counts of plaintiff's original complaint. Needless to say, defendant's summary judgment motion does not address these claims. *See Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097 (5th Cir.1979). For these reasons, plaintiff's motion for leave to amend is hereby DENIED.

## III. CONCLUSION.

In sum, defendant's motion for summary judgment is GRANTED. Plaintiff's motions for summary judgment and for leave to amend are DENIED. This action is hereby DISMISSED.

SO ORDERED.